UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TODOR STEFANOV, | ) |
|         *Plaintiff*, | ) |
|         vs. | ) No. 1:21-cv-00976-JMS-MG |
| TRENT MCINTYRE, | ) |
|         *Defendant*. | ) |

**ORDER**

Plaintiff Todor Stefanov initiated this litigation against Defendant Trent McIntyre, an Officer with the Carmel, Indiana Police Department ("CPD"), asserting claims under 42 U.S.C. § 1983 related to an incident at his home in Fishers, Indiana during the early morning hours of April 20, 2019. [Filing No. 1.] Officer McIntyre has now filed a Motion for Summary Judgment, [Filing No. 56], which is ripe for the Court's review.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). "'Summary judgment is not a time to be coy.'" *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)). Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). Further, the Court notes that Mr. Stefanov filed a short response to the Motion for Summary Judgment in which he states that he "agrees with the Statement of Material Facts submitted by Defendant." [Filing No. 74 at 1.] Accordingly, the Court accepts the facts set out by Officer McIntyre as true and sets them forth below.

### A. The Weaver Creek Neighborhood

Mr. Stefanov lives on a cul-de-sac in the Weaver Creek neighborhood in Fishers, Indiana with his wife and children. [Filing No. 57-1 at 7-8; Filing No. 57-2 at 7; Filing No. 57-4 at 1-3.] Officer McIntyre and his family live across the street from the Stefanov family. [Filing No. 57-2 at 7-8; Filing No. 57-3 at 3-4.] Despite living across the street from each other, Mr. Stefanov and Officer McIntyre did not know each other and had never interacted as of April 20, 2019. [Filing No. 57-1 at 35; Filing No. 57-2 at 11; Filing No. 57-2 at 14.]

### B. The April 20, 2019 Incident

#### 1. Officer McIntyre's Initial Encounter With Mr. Stefanov

Mr. Stefanov is a recruiter for the United States Air Force and returned home from a military mission around 4:30 a.m. on April 20, 2019 to spend the Easter weekend with his family.

[Filing No. 57-1 at 13; Filing No. 57-1 at 16.] Mr. Stefanov parked in front of his house on the street and began gathering his things to go inside. [Filing No. 57-1 at 17; Filing No. 57-1 at 21.]

Meanwhile, Officer McIntyre, a patrol officer with CPD since 2004, was preparing to leave his house and start his shift. [Filing No. 57-2 at 6-7.] He noticed Mr. Stefanov's car parked across the street, which was occupied and had a loud radio playing, and he thought this was unusual given the time of day. [Filing No. 57-2 at 7-8; McIntyre Bodycam at 00:00-00:20.[1]] Officer McIntyre approached the car and tapped on the driver's side door window to see if everything was okay. [Filing No. 57-2 at 7-8; McIntyre Bodycam at 00:00-00:20.]

Mr. Stefanov saw a person in an all-black outfit with his hand on his hip outside the car, who turned out to be Officer McIntyre. [Filing No. 57-1 at 17.] Although Mr. Stefanov never saw a weapon, he initially thought that he was getting mugged. [Filing No. 57-1 at 17; Filing No. 57-1 at 23.] Officer McIntyre did not identify himself, so Mr. Stefanov did not know that it was his neighbor or a police officer. [Filing No. 57-1 at 17; Filing No. 57-1 at 21; Filing No. 57-1 at 35; Filing No. 57-2 at 9-10.]

When Mr. Stefanov opened his car door, the car dome light came on. [McIntyre Bodycam at 00:21-00:24.] Officer McIntyre asked Mr. Stefanov, "How are you doing? Everything okay?" [McIntyre Bodycam at 00:21-00:23.] Mr. Stefanov responded, "yeah." [McIntyre Bodycam at 00:23-00:24.] Officer McIntyre saw Mr. Stefanov move his right hand in between his knees and Officer McIntyre thought he observed what looked like a handgun in Mr. Stefanov's hand based on how Mr. Stefanov was holding the object and its appearance. [Filing No. 57-2 at 8; Filing No.

---

[1] Officer McIntyre filed a flash drive containing the footage that his bodycam recorded during his April 20, 2019 encounter with Mr. Stefanov and the events that followed. [Filing No. 58 (Notice of Manual Filing); Filing No. 59 (Clerk's receipt of the flash drive).] The Court cites to the contents of the flash drive as "McIntyre Bodycam" and specifies the time frame within the video to which it refers.

4

57-3 at 4.]  This observation prompted Officer McIntyre to ask Mr. Stefanov, "is that a firearm that you have in your hand, dude?  You okay?"  [McIntyre Bodycam at 00:26-00:29.]  Mr. Stefanov did not answer the question about the firearm, but said "I live here," and pointed to the house behind him.  [McIntyre Bodycam at 00:29-00:30.]  Officer McIntyre said, "okay," and Mr. Stefanov asked, "is there a problem?"  [McIntyre Bodycam at 00:30-00:31.]  Officer McIntyre said, "Nope, nope; you're good," and "it's just that it's 4:00 in the morning and [inaudible] just making sure you're alright."  [McIntyre Bodycam at 00:32-00:38.]  Mr. Stefanov told Officer McIntyre, "I was just finishing listening to my audiobook."  [McIntyre Bodycam at 00:38-00:43.]  Officer McIntyre said, "okay" and asked, "this is your house though?," gesturing to the house behind Mr. Stefanov's car.  [McIntyre Bodycam at 00:44-00:45.]  Officer McIntyre also asked, "your wife home?," to which Mr. Stefanov responded, "yeah."  [McIntyre Bodycam at 00:45-00:47.]  Officer McIntyre backed away from the car and said, "alright man, just checking on you."  [McIntyre Bodycam at 00:47-00:50.]  Shortly thereafter, Mr. Stefanov gathered his things, went inside his house, and went to bed.  [Filing No. 57-1 at 17.]

        2.        *Officer McIntyre Contacts the Fishers Police Department*

Officer McIntyre had expected to find a neighbor or someone who was perhaps intoxicated when he approached Mr. Stefanov's car, but when he saw what he thought was a firearm and Mr. Stefanov did not answer his question about whether it was a firearm, Officer McIntyre did not want to escalate the situation and stepped away.  [Filing No. 57-2 at 8; McIntyre Bodycam at 00:27-01:03.]  Officer McIntyre also thought that Mr. Stefanov might have been crying.  [Filing No. 57-2 at 10.]

Officer McIntyre had lived on the street for many years and never saw anyone out during that time in the morning.  [Filing No. 57-2 at 12.]  In his training and experience, if officers interact

5

with someone in a vehicle at 4:30 a.m., it is because the person is intoxicated, fell asleep, or is experiencing some type of mental or physical health emergency. [Filing No. 57-2 at 16-17.] Officer McIntyre has also been involved in incidents where someone is in the throes of a mental health crisis and commits suicide in a vehicle. [Filing No. 57-2 at 17-18.]

Officer McIntyre was concerned for Mr. Stefanov's welfare based on his demeanor, appearance, and the time of day, and got into his CPD police car and contacted dispatch to request that officers from the Fishers Police Department ("FPD") come to his residence. [Filing No. 57-2 at 9-10; McIntyre Bodycam at 01:06-01:11, 01:44-01:57.] Officer McIntyre told dispatch, "[there is a] neighbor outside in his car; [I] believe he may have a firearm in his lap. [I] tried to talk to him; I'm not sure what's going on yet." [McIntyre Bodycam at 01:56-02:07.]

Officer McIntyre then got out of his police car and walked back across the street to provide dispatch with Mr. Stefanov's address, walked up Mr. Stefanov's driveway, stood there for a few minutes, then walked over to Mr. Stefanov's car and shined his flashlight inside. [McIntyre Bodycam at 04:14-06:56.] As Officer McIntyre looked inside Mr. Stefanov's car, he said to himself, "man I don't know if he had one or not." [McIntyre Bodycam at 06:49-06:52.] Officer McIntyre then returned to his police car parked in his driveway. [McIntyre Bodycam at 06:53-07:14.]

   3. *FPD Officers Arrive on the Scene*

Shortly thereafter, FPD officers arrived on the scene and Office McIntyre told them what he heard and observed, including that he had heard a loud radio, and that Mr. Stefanov made a "gun movement" and "grabbed it," but that Officer McIntyre "didn't see the gun." [McIntyre Bodycam at 08:13-09:05; Filing No. 57-2 at 10; Filing No. 57-2 at 15.] Officer McIntyre also told the FPD officers that "it looked like [Mr. Stefanov] had been crying," but that he was not crying

6

when Officer McIntyre spoke to him. [McIntyre Bodycam at 10:16-10:23.] Officer McIntyre had "concerns that there could be some type of mental health issue going on." [Filing No. 57-2 at 12.]

Once FPD officers arrived on the scene, Officer McIntyre "had no involvement from then on out," and "let [the FPD officers] handle it tactically as they would from their department." [Filing No. 57-2 at 10-11.]

    4. *FPD Officers Wake the Stefanovs, Order Mr. Stefanov to Come Outside, and Detain Him*

About thirty to forty-five minutes after Mr. Stefanov's encounter with Officer McIntyre, Mr. Stefanov's wife woke him up because she heard someone calling her name outside and saw bright lights in the windows. [Filing No. 57-1 at 17.] The Stefanovs determined that there were police cars outside of their house and Mrs. Stefanov called 911. [Filing No. 57-1 at 17; Filing No. 57-1 at 24.]

Meanwhile, the FPD officers repeatedly demanded that Mr. Stefanov and his wife come out of their house. [Filing No. 57-1 at 23-24.] Mr. Stefanov came out of his house around 5:15 a.m. and FPD officers instructed him to walk out of the house backwards towards them with his hands above his head. [Filing No. 57-1 at 26; Filing No. 57-1 at 33-34.] Once outside, Mr. Stefanov saw three or four police cars and officers on his front lawn with their weapons drawn. [Filing No. 57-1 at 18; Filing No. 57-1 at 25.] FPD officers immediately frisked and handcuffed Mr. Stefanov. [Filing No. 57-1 at 17-18; Filing No. 57-1 at 26-28.] Even after Mr. Stefanov was handcuffed, the officers did not lower their weapons. [Filing No. 57-1 at 40.]

    5. *FPD Officers Determine Mr. Stefanov Does Not Pose a Danger and Release Him*

FPD officers then walked Mr. Stefanov over to their vehicles and spoke with him about the situation. [Filing No. 57-1 at 27-29.] At some point, Mr. Stefanov's wife came outside to try to

de-escalate things. [Filing No. 57-1 at 18.] Mr. Stefanov explained to FPD officers that he had just returned home for Easter, that he was a recruiter for the Air Force, and that he did not understand why the police were there. [Filing No. 57-1 at 29.] The FPD officers then told him that someone reported a suspected suicide. [Filing No. 57-1 at 29-30.]

Officer McIntyre then joined in the conversation and asked Mr. Stefanov about the gun in his car. [Filing No. 57-1 at 28-30; Filing No. 57-1 at 36-37.] Mr. Stefanov told Officer McIntyre and the FPD officers that he never carries a gun, and did not have a gun in the car or in his house. [Filing No. 57-1 at 30-32; Filing No. 57-1 at 37.] At that point, Mr. Stefanov understood that Officer McIntyre was a CPD officer rather than an FPD officer. [Filing No. 57-1 at 34.] FPD officers then determined that "the situation [was] not what it was reported to be," and that they had obtained enough information from Mr. Stefanov and his wife to uncuff Mr. Stefanov and let him go. [Filing No. 57-1 at 19; Filing No. 57-1 at 37.] Mr. Stefanov estimates that he was handcuffed for about 15 to 20 minutes and he did not sustain any physical injuries during that time. [Filing No. 57-1 at 38; Filing No. 57-1 at 53.] He then returned into his house. [Filing No. 57-1 at 51.]

Officer McIntyre did not physically touch or handcuff Mr. Stefanov and did not direct any FPD officer to do anything during their investigation. [Filing No. 57-2 at 22.] Because the City of Carmel and the City of Fishers are different municipalities, Officer McIntyre had no ability to control the number of officers that Fishers dispatched to the scene. [Filing No. 57-2 at 22.]

**C.  The Lawsuit**

Mr. Stefanov initiated this litigation on April 20, 2021 against Officer McIntyre and the City of Carmel, asserting false arrest and unlawful detention claims under the Fourth Amendment to the United States Constitution and state law claims for battery, false imprisonment, and false arrest. [Filing No. 1.] On September 12, 2022, the parties filed a Stipulation of Partial Dismissal

in which they stated that they were stipulating to the dismissal of the City of Carmel as a defendant, Mr. Stefanov's state law claims, and "any federal claim against [Officer] McIntyre for [his] initial interaction with [Mr. Stefanov] at his vehicle." [Filing No. 54.] Accordingly, the Court dismissed those claims, [Filing No. 55], leaving only Mr. Stefanov's claims for false arrest and unlawful detention in violation of the Fourth Amendment against Officer McIntyre for the time period after the initial interaction between Mr. Stefanov and Officer McIntyre which took place while Mr. Stefanov was in his car.  Officer McIntyre then moved for summary judgment on those remaining claims.  [Filing No. 56.]

### III.
### DISCUSSION

In support of his Motion for Summary Judgment, Officer McIntyre argues that he did not act under color of state law and that he is entitled to qualified immunity because he did not commit a constitutional violation and, even if he had, he did not violate Mr. Stefanov's clearly established rights.  [Filing No. 62 at 12-23.][2]  The Court notes that Mr. Stefanov's response brief is three pages, approximately two pages of which are spent arguing that Officer McIntyre was acting under color of state law when he "caused [Mr. Stefanov's] arrest and multiplied police presence at [Mr. Stefanov's home] by summoning [FPD] officers indicating to them [that Mr. Stefanov] appeared to have a firearm when he did not."  [Filing No. 74 at 1.]  The Court assumes without deciding that

---

[2] Officer McIntyre also argues that Mr. Stefanov did not file a Statement of Claims, as he was required to do by the Court's Case Management Plan, and so is limited to the claims in his Complaint that have not been dismissed – i.e., "false arrest and unlawful detention in violation of the Fourth Amendment against Officer McIntyre." [Filing No. 62 at 12 (quotations and citations omitted).]  Mr. Stefanov does not argue otherwise in his response brief, nor does he purport to assert any other claims.  [See Filing No. 74.]

9

Officer McIntyre was acting under color of state law when he called the FPD,[3] and begins its discussion with whether Officer McIntyre is entitled to qualified immunity.

Officer McIntyre argues in support of his Motion for Summary Judgment that he did not have sufficient personal involvement to be held individually liable for a constitutional violation under 42 U.S.C. § 1983. [Filing No. 62 at 17.] He asserts that his only involvement was "merely contacting the police department of a neighboring jurisdiction," and that once FPD officers arrived on the scene he "stayed in the background and simply relayed to them the same information that he gave to dispatch." [Filing No. 62 at 17.] Officer McIntyre states "if Mr. Stefanov objected to the way he was detained, he should have sued the [FPD] officers who responded to the dispatch and detained him, not the messenger." [Filing No. 62 at 18.] He argues further that Mr. Stefanov cannot show that Officer McIntyre's actions were the proximate cause of Mr. Stefanov's rights allegedly being violated and that reasonable grounds existed to temporarily detain him in any event because he was thought to be possibly suicidal or a danger to himself or others. [Filing No. 62 at 18-22.] Finally, Officer McIntyre argues that even if the Court finds that he committed a constitutional violation, Mr. Stefanov's rights were not clearly established because there was at least arguable probable cause for Mr. Stefanov's arrest. [Filing No. 62 at 22-23.]

In response, Mr. Stefanov argues that Officer McIntyre is not entitled to qualified immunity and sets forth one sentence in support of his argument: "[Officer McIntyre's] conduct in falsely

---

[3] The fact that Officer McIntyre was off duty and outside of Carmel when he called the FPD is not necessarily dispositive of the issue of whether he was acting under color of state law. Rather, the Court must look to "the nature of the specific acts performed," including whether Officer McIntyre "was engaged in police activity,…displayed any police power, or…possessed any indicia of his office at the time of the [incident]." *Latuszkin v. City of Chicago,* 250 F.3d 502, 505-06 (7th Cir. 2001). This is a fact-specific inquiry and given that other issues are more clearly dispositive of Mr. Stefanov's claims, the Court assumes without deciding that Officer McIntyre was acting under color of state law when he called the FPD to report his encounter with Mr. Stefanov.

reporting [that Mr. Stefanov] held a firearm in his car when he did not violated [Mr. Stefanov's] clearly established constitutional rights to be free from unlawful search, seizure, and detention, effected by [FPD] officers as a result of [Officer McIntyre's] false report." [Filing No. 74 at 3.]

In his reply, Officer McIntyre argues that Mr. Stefanov did not respond to his arguments that Officer McIntyre did not commit a constitutional violation, that Officer McIntyre lacked sufficient personal involvement in the purported constitutional deprivation, that Mr. Stefanov could not demonstrate causation, and that reasonable grounds existed to temporarily detain Mr. Stefanov. [Filing No. 76 at 3.] He also asserts that Mr. Stefanov has not met his burden of showing that any constitutional right that he claims was violated was clearly established. [Filing No. 76 at 3-6.]

"A state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Reed v. Palmer, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotations and citations omitted). "'If either inquiry is answered in the negative, the defendant official' is protected by qualified immunity." Id. (emphasis omitted) (quoting Green v. Newport, 868 F.3d 629, 633 (7th Cir. 2017)). The Court may decide these issues in either order. Miller v. Harbaugh, 698 F.3d 956, 962 (7th Cir. 2012). If the right at issue was not clearly established at the time of the violation, the Court may exercise its discretion not to determine whether the defendant violated the plaintiff's constitutional right. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("[T]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Once the defense of qualified immunity is raised, 'it becomes the plaintiff's burden to defeat it.'" *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

Officer McIntyre argues that Mr. Stefanov cannot satisfy the first requirement for overcoming a qualified immunity defense – that Officer McIntyre violated Mr. Stefanov's constitutional rights – because Officer McIntyre was not sufficiently personally involved in the alleged constitutional deprivation, Officer McIntyre's actions did not cause the alleged constitutional deprivation, and reasonable grounds existed to detain Mr. Stefanov. [Filing No. 62 at 17-22.] While the Court is skeptical that Mr. Stefanov can make those showings,[4] it opts, in its discretion, to first determine whether the constitutional right that Mr. Stefanov claims was violated was clearly established.

---

[4] For example, the Court is skeptical that Officer McIntyre was sufficiently personally involved in a constitutional deprivation to support Mr. Stefanov's claims. "[I]ndividual liability under § 1983…requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quotation and citation omitted); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation…. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.") (emphasis omitted). The Court is not aware of any case law indicating that an off-duty police officer who calls the local police department to report that he believes an individual has a gun and is concerned for the individual's safety is sufficiently involved in the eventual detention of the individual during the investigation of the off-duty police officer's concerns. Indeed, Mr. Stefanov does not respond to Officer McIntyre's arguments regarding a lack of personal involvement so has waived any opposition. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver."). While the Court could grant summary judgment for Mr. Stefanov's failure to establish that Officer McIntyre was sufficiently involved in a constitutional deprivation on waiver grounds alone, it assumes without deciding that Officer McIntyre was sufficiently involved in the alleged constitutional deprivation and goes on to consider whether the constitutional right was clearly established.

To determine whether a right is clearly established, the Court looks to controlling precedent from both the Supreme Court of the United States and the Seventh Circuit Court of Appeals, and if there is no such precedent it "cast[s] a wider net" and examines "all relevant case law to determine whether there was such a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) (quotations and citations omitted).  As set forth by the Supreme Court, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'  If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity.  If not, however – *i.e.*, if a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1850 (2017) (citation omitted).

Mr. Stefanov's Fourth Amendment false arrest and unlawful detention claims are based on his alleged right to be free from Officer McIntyre calling the FPD when he mistakenly thought that he saw a gun in Mr. Stefanov's hand and was concerned for Mr. Stefanov's welfare.  Indeed, this is the only conduct by Officer McIntyre that Mr. Stefanov's claims could be focused on because it is his only conduct other than the initial encounter while Mr. Stefanov was in his car, and Mr. Stefanov has dismissed any claims related to that timeframe.  [Filing No. 54.]  Indeed, Mr. Stefanov frames his right as Officer McIntyre "falsely reporting [that Mr. Stefanov] held a firearm in his car when he did not," which he claims caused the FPD to falsely arrest and unlawfully detain him.  [*See* Filing No. 74 at 3.]

It is Mr. Stefanov's burden to show that his right to be free from a false report that he had a firearm in his car was clearly established at the time of the incident, *Estate of Escobedo*, 702

13

F.3d at 404, but he merely conclusorily states that Officer McIntyre "violated [his] clearly established constitutional rights to be free from unlawful search, seizure, and detention, effected by [FPD] officers as a result of [Officer McIntyre's] false report." [Filing No. 74 at 3.] Mr. Stefanov cannot escape the application of qualified immunity by defining in a general manner the constitutional right that he claims was violated. *See City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[A] clearly established right must be defined with specificity. [The Supreme Court] has repeatedly told courts…not to define clearly established law at a high level of generality.") (quotation and citation omitted). Mr. Stefanov has not pointed to – and the Court's research has not revealed – any case law clearly establishing that, as of April 20, 2019, an off-duty police officer who calls the local police department to report that he believes an individual has a gun and may be in danger, which ultimately leads to the individual's detention, violates that individual's Fourth Amendment rights. Because Mr. Stefanov has failed to establish that the constitutional right that he claims was violated was clearly established, Officer McIntyre is entitled to qualified immunity on Mr. Stefanov's Fourth Amendment false arrest and unlawful detention claims and the Court **GRANTS** Officer McIntyre's Motion for Summary Judgment. [Filing No. 56.]

### IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Officer McIntyre's Motion for Summary Judgment [56]. Final judgment shall enter accordingly.

Date: 2/14/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**